Mr. you're gonna have to pronounce your name because I'll mess it up so we share all right go right ahead thank you your honor and thank you Helens and all similarly situated United taking the time to consider our appeal on such an expedited basis now this case presents a straightforward but important legal question and that is whether a company like United imposes irreparable injury on employees when it mounts a sustained effort to coerce them into violating their religious beliefs or their health needs by putting them as this court put it in BST to a choice between their jobs and their jabs especially whereas here other professional consequences of being placed on indefinite unpaid leave are so severe now that this legal question is important because if what United is doing does not impose irreparable injury a company can likely escape all accountability for having violated its employees rights and that's because if an employee succumbs to the pressure and violates her beliefs as one of our clients did during the course of this case the company will later argue as the government did in the together employees case of the United sites the company will later argue that the employee did not suffer damages because she made the decision herself Shirley we need to start the clock thank you giving you some extra time but that's all right thank you your honor we'll take all the time you need today could you help us with what the scope of this right to a to an injunct injunctive relief pending you know pending the outcome of the litigation this is not a permanent injunction it's a preliminary that's correct what when this would apply in an employment case is it in any employment case that were reasonable accommodation is sought you if you can show that failure to be accommodated would violate your rights your conscience your faith or is it in a particular category a subset of religious accommodation cases it's the latter your honor and what is that particular and we would say that this is a relatively easy case because there was such clear coercion here but we would say that in cases in cases where there is a sustained effort to coerce employees into violating their religious beliefs so could move Davis Supreme Court in the Fort Bend case if she wanted to go to a prayer meeting every Sunday could she get an injunction to go to her prayer meeting every Sunday no I don't think you I don't think so your honor I mean it's if the employer simply fires the employees in response to a request for accommodation I wouldn't consider that a sustained asking for it while they're still working there could they say I like well I intend to go every week you know I'm trying to distinguish that from like the TWA case on that case has collective bargaining and other issues too but when does it apply in an employment religious accommodation does it if you're gonna you want to wear your religious garb you get an injunction for that pending the outcome of the law lawsuit I think it really depends on how the employer handles the situation if the employer makes a sustained effort to to coerce a violation of religious beliefs that I think you can get a preliminary injunction to prevent them from trying to force you to violate your religious beliefs now that that may leave the employer with a choice of am I going to fire this person or not right because once the once the person has been fired there there's no more coercion the coercion is is complete you can get in a car anytime there's a religious accommodation issue that's ongoing you could get an injunction then why aren't there many more cases with injunctions in the title 7 context well a number a number of reasons your honor first of all in in the garden variety case the employer typically has a pretty good argument for undue hardship and so it's difficult for the employee to establish to establish a likelihood of success on the merits because the employer has got a good argument for undue hardship in this case United does not have a good argument for undue hardship because and this is one of the coercive what are the important facts in the case during the United they said look we'll we'll take away your concern about any concern you might have about safety we'll take that away we will ourselves pay to be tested even every day if you want us to and you know if we're tested every day there's no way we can be a greater threat to other employees or to passengers right than if we were simply vaccinated so Judge Elrod asked a good question because obviously we have to be careful and should we decide that injunctive relief here would be possibly appropriate how far does it go and how would how would it be read let me give me give another hypothetical let's say that there's an employee in a company who is the victim of continuing highly obnoxious racial epithets or let's say that there's an employee who's disabled and he or she receives constant daily criticism made fun of the of the handicap and it's pretty obvious that that's that that's happened sue under title 7 or or the ADA terrible terrible harm being inflicted on a daily ongoing basis injunction no your honor I think that case would fall well outside of the rule we're arguing for here well why what's what's the what's the legal distinction I don't see it one word your honor coercion in your hypothetical there's there's no attempt to coerce anybody to do anything but what we have here is clear sustained coercion by United in fact there are three there are three facts that to me highlight the coercive character of United's policy I've already mentioned the the offer we made during the litigation to take the through daily testing at our at our at our clients expense the record also so what which what what case law tells us that coercion is the test I think BST is the best authority we have well but that was a governmental employee you know that that doesn't apply that that gets you nowhere well I think it I think it does your honor I think I think the for reasons judge Ho explained in his in his impending appeal BST is a matter of logic and law really does apply in this situation and I'm happy to explore that at greater length but but as to the coercion point the the second key fact in my view is that the record shows as United has often touted that the risk of catching COVID on its airplanes is infinitesimally low with or without a vaccine and and some 99% of United's employees are already vaccinated and finally there's there's evidence that that was correct credited by judge Pittman below showing that United CEO deliberately set out to coerce employees with religious scruples against the vaccine into violating those beliefs and when you put all those facts together it could not have been for purposes of safety and in fact judge Pittman he thought that was pretextual the only possible explanation is you know marketing or virtue signaling or currying political favor or something you know something else and it's it's that complex of facts that among other things we think makes makes this case pretty unique and this case in BST we think fall into quite a narrow category of cases where a preliminary injunction would be available in this circumstance now are you asking the court to order the district court to impose a preliminary injunction oh your honor are you asking to be remanded for the other factors to be considered the latter we're simply asking the court to reverse the district court's finding that there was no irreparable injury or at least that we haven't established and remand for the finding on the merit that's correct your honor etc right and to do that we would have to declare that there was or is irreparable injury I'm sorry in order to do that we would have to declare that there is irreparable injury well I think that would be an easy conclusion on this record but if but if the court prefers the court could say no the the the BST decision applies in the title 7 context and so you know district court go ahead and apply the to the the BST outcome in a case with a you said it wouldn't apply in a garden variety I guess in the sabbath example or the hijab example if the employer every day is sending them home so home and they can't bid on the the next job because they're wearing their hijab are you saying that that that case would or would not be in the side of irreparable injury that each day deciding whether or not to to wear your your religious uh guard that's very important to your faith well I think you know in in that very unusual case it might well fall within the rule especially if there's evidence that the employer is trying to coerce the choice but if but if you look at these kinds of cases in the title 7 context Abercrombie being one good example that was a that was a one-time transaction with the woman who applied for a job at Abercrombie was wearing a hijab and and they said no we're not you know we're not going to give you the job there was no ongoing attempt I'm saying an ongoing you show up every day you say sorry you can't be a flight attendant today um go home and they did that every day could they would they fall on this side of the line trying to figure out where that that may well that that probably would fall on this side of line but these again these cases are very rare there's another unique feature of this case and that is that it involves a vaccine um and and a vaccine is a is in a sense an irreversible choice if it was you had to get a some kind of device that could be read you know we're very futuristic here some sort of thing implanted so that it could be read by a reader instead of a implant reader would that fall on this side of the line if it you know they say every employee has to get something implanted so it can be read in this space you know kind of job that would be on this side of the line right well if there's an ongoing effort to to coerce the employee into doing that as opposed to simply saying you know you either you either you either have to get this device or you're going to be fired tomorrow the ADA are you are you emphasizing your ADA plaintiffs I don't read a lot about that in the briefing well all of all of the plaintiffs that are before the court right now have religious have title 7 religious accommodation claims and a couple of them only have ADA claims and so we you know we we do think the principle of BST applies in the ADA contact context as well but it wouldn't be essential for the court to reach that here and it doesn't matter whether or not particular plaintiffs have been accommodated along the way as the case has progressed because there at least there's at least one who hasn't is that correct yes there are there are a couple of a couple of appellants who have been temporarily accommodated but the but this court's case law is quite clear and in fact I apologize that we didn't cite the leading case in our reply brief the leading case that we've been able to find is called versus Duncanville uh independent school district it was an opinion by Judge Smith several years ago and it makes clear uh that you know that that this kind of what's the what's the buzzword uh um this kind of voluntary cessation uh of illegal activity does not eliminate irreparable injury that was the prayer at the basketball that's right it was it was the school the the mandatory school prayer case that's exactly right so as you know we can in this circuit we can affirm on any ground that appears in the record so we could affirm the denial of injunction on any of the other prongs let's talk about the likelihood of success on the merits setting aside for the moment the question of exhaustion I don't think you've but but assuming that exhaustion isn't a problem so you have you have three plaintiffs who have been given accommodations and the other two are are cockpit personnel only one's a cockpit person only one the other person is a flight attendant flight attendant all right no thank you for the considerations for them we don't have to decide the merits but all we have to decide is that you haven't shown a substantial likelihood of success on the merits maybe ultimately you would prevail but now I I don't see how there's a likelihood particularly as to the as to the as to the three who've been who've been accommodated well Judge Pittman thought and I and I and I believe this is a quote from his opinion that that plaintiff's claims appear strong and compelling I think was the was the language that he used and and yeah he he he he threw in some cheap shots there's no there's no doubt about it they had nothing to do he said he was dwelling only on the irreparable harm and then he managed to try to poison the well as best as best he could he certainly did that well I I think he wanted to convey to the world that he thought our claims had merit uh um but I think the um did I answer your question Judge Smith well I I on in terms of the accommodations in particularly for the for the for the three um uh who aren't the in-flight personnel I just I just don't see how you you've shown us that there's likelihood of success uh there there may be a slim chance that they would succeed ultimately but that's not what we're looking at on on an injunction well it's it's important to understand that that those that those three people who have been temporarily accommodated um are still subject to united's policy uh that if you that if you want a religious or a medical exemption uh what you were entitled to if they approve it is indefinite unpaid leave um that is the policy it was it was it's clear in the record it was articulated at the very beginning uh of this whole process and and yes it's true that in response to our preliminary injunction motion in fact the day before the preliminary injunction hearing united decided uh to offer some temporary accommodations uh to to those three I think it was all three of them were you know were were granted uh right before the preliminary injunction hearing but um but one of them is expressly limited to 59 days and the and the other two have been told repeatedly look you know we may change our mind at any time and you may bet you may be back to our you know to our main policy so it may be that their irreparable injury is not as imminent as it is for the uh for the pilot and the flight attendant um it may not be as imminent but it but it's still very likely because you know because united has said we can change our we can change our mind at any time and they only acted in response to our preliminary injunction motion now on the question of irreparable harm why isn't why isn't white versus carlucci a strong enough circuit precedent for us to uh to affirm that case has been cited as you know over 200 times since it was since it was uh since it was issued and there's some pretty strong language in there about what what is not irreparable harm yes as i recall white it it it holds very clearly that irreparable injury has to be separately established um and and the court implicitly rejected the view of the ninth circuit that there's a sliding scale when it comes to assessing irreparable injury that you can you can you can grant a p.i. on a lower showing of injury if the likelihood of success is higher and and and that's all true we don't take any issue at all with that in fact we embrace it uh because we we very uh diligently um established uh irreparable injury and well well here here here's here's the key key passage it seems to me uh and i'm quoting it of course of course i wrote it as you know but uh but i'll read it just one sentence the burden of proof is not reduced by either the existence of an extremely strong likelihood of success or the egregiousness of the alleged wrong upon which the underlying claim is based that that that's a preliminary injunction case yeah and we we have no quarrel with that um but and let me let me just maybe go into a little more depth about the nature of our of our irreparable injury and that may help to answer uh answer your honor's question um you know as as judge ho's ho's opinion explains uh the principle in bst is that forcing people to choose between their faith and their livelihoods creates what he called a crisis of conscience that ipso facto causes irreparable injury and indeed i would say that the kind of coercion that we've seen here is is even more significant than the subtle coercion that was sufficient to establish irreparable injury in the in the duncanville school district case your honor i that was that wasn't a sustained effort to coerce anybody um but that was also a government employee employed yeah it was certainly a government employee that's right that is um you know for but for all the for all the texas appellants who were before the court this case presents the same kind of crisis of conscience as was present in bst a concern common to all of them is that as the unrebutted expert testimony showed below all three of the available vaccines were either designed or tested using stem cell lines from aborted fetuses and given these appellants religious views about abortion and complicity and evil they believe that vaccination would make them complicit in the destruction of innocent human life now not everybody who who shares their view about abortion accepts that that view of complicity but that is their view and it's sincere and judge pittman found that it was sincere and as judge pittman noted it's a choice that cannot be undone once you've made it and so that it's a it presents a serious religious concern that united now pits through its policy it pits that against their desire to provide for their families and so as judge ho put it to hypothesize that the earthly reward of monetary damages could compensate for these profound challenges of faith is to misunderstand the entirety of religious conviction so is your is it your position then that that we would have to presume irreparable injury anytime a plaintiff alleges a denial of religious accommodation no no again i what's what's key here is a sustained effort at coercion backed by evidence um as we have done it here and to come back to your your earlier question about about government versus uh versus private entity is the as the defendant judge ho also addressed that he said to the person of faith who was forced to confront this challenge of conscience what matters is not who imposed the mandate but that the mandate conflicts with religious conviction well don't you think it matters though whether a plaintiff is suing under for statutory grounds under title 7 or 8 ea as opposed to raising a constitutional claim against a governmental under the first amendment or some other provision not for purposes of irreparable injury your honor i mean it certainly does matter in some respects in the case but but not for purposes of irreparable injury the the injury in practical terms the injury to our clients is identical to the injury that they would sustain if it if they worked for a governmental employer and the governmental employer would doing the same thing that that united has done from their standpoint the constitutional right is purely metaphysical um all right so it's uh while we've got time let's talk about let's let's talk about exhaustion okay you haven't exhausted uh our our clients have exhausted your honor they have done everything uh that they need to do in order to get a decision from the uh from the eoc they have filed their claims with the eoc but we have at the step but statute says they can't sue until they've until they've received that that letter well there's a that there's there's a large body of case law including the drew case from from this court that says that that they can seek a preliminary injunction to maintain the status quo while the eoc is doing its processing but but by the time the this circuit decided the drew case uh exhaustion exhaustion was complete i don't see how you get any any benefit from the from the drew case that that that was a fully exhausted case and this one is not well maybe by the time it came to the court it was fully exhausted uh but as i recall the drew case involved uh whether somebody whether somebody could seek attorney's fees uh or that sort of and the court said wait a minute uh they they legitimately filed this lawsuit um even before the eoc had acted on their claims um and and and so it was a it was a legitimate lawsuit and they legitimately sought a preliminary injunction uh so we you know we we think drew is is controlling on on the exhaustion question here and and again i that you know our clients have done everything they possibly can they're trying to get the eoc to move as quickly as possible and all we're seeking is is what the plaintiff in drew sought which is a which is in order maintaining the status quo until the eoc finishes finishes its process can i ask one question um kimberly hamilton um says that she didn't get the um medical medical insurance that she needs for her husband is that a basis of the irreparable harm that if the medical insurance has been cut off uh and is is that is that in the record in a robust manner it it it is in the record and we and we devoted a good portion of both of our briefs to to that issue um you know i think that that's an argument the court might well reach if you if you conclude that bst does not apply and you disagree with judge ho about that well i'm that's what i'm asking is yes and i'm not foreshadowing right those two things you just said but is the fact that you don't have medical care for the cancer treatment that's being cut off right then is that in the record in a robust way and would that be the irreparable harm the lack of ability to get ongoing cancer care and you i'm not trying to be not um sympathetic or appropriate about yes no and and and and that certainly that certainly would be an alternative basis for uh for a preliminary injunction or for a finding of irreparable injury as to um as to that particular plaintiff that's correct no one else has questions you've saved time for about thank you thank you your honor sure uh may it please the court the preliminary injunction the denial of the preliminary injunction should be affirmed for three independent reasons first plaintiffs irreparable injury theories are legally untenable second even if they were what i'm sorry legally untenable second even if they were right about the law the factual record provides no support for those legal theories in this case and third in all events they fail to exhaust their administrative remedies let me start with the legal point and i think the starting point for the law here is this court's decision in white versus carlucci as judge smith emphasized the passage that judge smith emphasizes exactly the right one to focus on and i would appoint this court also to the immediately preceding sentence where this court emphasized that uh the irreparable injury has to be proven separately and convincingly and this is the key part regardless of the quote nature of the claim well that's exactly what they're the error they're making here what they are arguing is that there's a subset of title seven claims where they don't have to show irreparable injury it just per se exists and that set of claims is religious accommodation claims i'm not sure i understand that it strikes me that they're making a slightly more subtle argument um which i took i take you refute but the argument is it's not that they don't have to show irreparable injury it's that the injuries that they're suffering are two they're suffering one injury from being put on unpaid leave indefinitely and they're suffering a second injury because they're putting to the crisis put to the crisis of conscience in choosing their fate and so it's not that they don't have to prove it it's just that one is the title seven injury that's the unpaid leave thing and the me in this coercive choice about whether to get a shot or not but the problem is that that second choice theory is present in every single title seven religious accommodation claim every single time an employer tells an employee i'm not going to accommodate your religious practice and if you don't comply with our neutral rules you're going to face adverse employment consequences is it is this is not like a series of individual choices you know today i'm gonna obey the sabbath next week i may not you know it's it it's a one and done thing it's it's either on or off well so three points about that your honor was i don't think that's correct okay first at the time of the initial choice that's not true so take a sabbath case when the employer tells the employee you either have to show up to work tomorrow or there's going to be adverse employment consequences right then and there they face the same exact choice and they could run into court and ask for a tro or a pi and they'd be making exactly the argument that they're making would that be the same case if it were a tattoo or an item implanted in their skin or do you see those as distinct i don't think this court can draw a distinction on those grounds precisely because of the nature of religious beliefs when you're an employee it's no answer to you to say well don't worry if you break the sabbath tomorrow because you can always comply with the sabbath next week if you think your eternal soul is going to be in endangered by violating sabbath tomorrow there's no doctrinal distinction between a tat something that's you can't remove a permanent tattoo not one no because from the from the perspective of the religious employee it's the that imposes the choice that they're so worried about so that's the first problem so you think that the that can continue so you could say you must accept this implant or else be put on leave yeah so so no preliminary injunctive relief available in a suit brought by an employer what if you were to say um if you um maintain your um it doesn't matter what muslim islamic or christian views you're going to be put on um unpaid leave you're just you can and we'll watch this just you know you know you we hired you but if you continue to be a practicing person of islam or christianity you're going to be on leave and so can does that have to last for years and years and years while that litigates through well on that particular hypothetical i don't think the rank expressed discrimination on the basis of religion so it'd be a pretty fast suit and it might well be some suits it might well be the fast what's what's fast nine months a year well then the other related thing is on a hypothetical like that i bet the eoc would come pretty quickly to the rescue because the eoc can actually bring suits so that's the distinction whether or not the eoc is favorable to the case no no i'll say a couple of things so first in terms of the irreparable injury i don't think there is a difference you couldn't sue you could sue i mean but you could you could not get an injunction even if you're put on leave for the promofacial reason that you are the particular faith group you could not establish irreparable injury in that case that's why they haven't cited a single case in the history of title 7 that has ever granted a preliminary injunction to a title 7 is there something that's preventing that um i yeah 50 years of precedent recognizing that what what what you know what case presents finding an irreparable injury i understand that there are a whole series of cases where they're not irreparable injuries but if you were to believe this theory that um the theory that you know this irreparable i mean the um coercion theory then what is there anything that would block this court from even if it were unique in doing so um saying that it should be demanded to reconsider that well so i would say two things your honor uh three things maybe the first is i do think white does actually foreclose it because white says you have to show a reprehend you regardless of the nature of the claim and what they're essentially arguing and the hypothetical you just posed is that there's a subset of title 7 claims where just by its nature they per se have irreparable injury so i don't think it's consistent with that i also don't think it's consistent with the whole body of case law that says that the fact that title 7 provides comprehensive remedies on the back end means that you don't have a reputable injury because again no one is actually being coerced into violating their religious beliefs every one of these employees can take the unpaid leave and then litigate the case and if they're right on the merits as they undoubtedly would be on the hypothetical you provided they'll get back pay and all the rest no one actually needs to violate their religious beliefs and that's underscored by the fact that they can wait it out for a year right just like every other title 7 plaintiff but most people can't wait it out for a year that's true your honor but that might that may be true your honor but that's also true for every title 7 plaintiff ever that's what i'm asking is if there could be an injunctive relief an accommodation clause what what prevents that so what i was the second point i was making your honor was that the mere fact that they might not have enough financial circumstances to wait it out is not a distinguishing factor from every title 7 case ever including for example this court's decision in the morgan versus fletcher case where the woman was responsible for 45 percent of her family's income and her house was probably going to get foreclosed and she certainly couldn't wait it out but maybe there should be a distinction for accommodation cases where it's not an after the person's been fired but it's an prospective accommodation cases well with all respect your honor i would think it would turn title 7 on its head if the only people who get preliminary injunctions are not racial minorities who are subject to actual discrimination but instead of religious plaintiffs who are seeking preferential treatment because remember look are you saying the religious rights under title 7 are somehow second class to the discrimination against race and sex and national origin you're exactly the opposite your honor as we were just discussing title 7 race and sex point dips don't get these primary injunctions even on stark facts even when they're going to have their house foreclosed disability ones could disability plaintiffs under 88 they haven't cited a single case of that either your honor but they could get accommodations injunctive relief in accommodations they can't not preliminary injunctions your honor in like the morgan case my the point i was trying to make is that in race cases and sex cases it is the general rule they've signed zero cases going the other way granting preliminary injunctions so if you try to create some exception for religious accommodation claims you're treating religious accommodation claims better than race cases and sex cases and i think everyone would have to believe that race cases are at least the heart of title 7 it's very strange and it's not just race versus religion it's racial discrimination cases versus this which is not a religious discrimination case it's a religious claim for preferential treatment i i don't the district court seemed to believe that your your client ceo actually was showing uh hostility to religion in his statements in his approach to this well your honor a couple of things first of all it's clearly not a discrimination place because we have a neutral policy and what they are asking for is to be treated better than everyone else who isn't vaccinated because they're religious well is it a neutral policy aren't there a lot of employees who don't i think judge oldham has a question perhaps this is my last question aren't there a lot of employees in other places that don't have to have be vaccinated that are employees of american so united i'm sorry of united no the only employee this policy applies to all u.s right but people who are but you use flight attendants from other countries and other people that don't have to so with respect to foreign employees it's because there are separate foreign laws that we have to comply with that doesn't make it a non-mutual policy just a recognition that we have to comply with other countries but it shows it's not an undue hardship to be working with people who are not vaccinated doesn't it no it shows that foreign law requires us to bear certain costs that we can't avoid because we can't violate foreign law but it still imposes well but if if you kind of you have a work pool that has some people who are and some people who aren't we are the obligation that you're actually accomplishing anything the argument goes down doesn't it i don't think so your honor but if i can make two more points about their coercion theory because i do think it's pretty important i think that they've largely tied their entire case to that so the first is think about what the effect of their rule is the effect of their rule is that they can get a preliminary injunction if we give them unpaid leave but they can't get a preliminary injunction if we fire them if i stood here right now and told you that united had made the decision to just terminate their clients on his own theory he wouldn't be entitled to a preliminary injunction that would be a perverse rule of law for this rather than give them unpaid leave which is a significant valuable benefit unpaid leave is often what employees seek is an accommodation in cases like savage cases it means they get to preserve their job it means that when they can come back to work their job is preserved what they're asking you to do is adopt a rule that's going to incentivize employers not to provide that that would turn the statute on its head what is the um adverse employment action in this case it's an element of their prima facie case i take it what is the adverse employment action so i'm not sure that you need to show a quote-unquote adverse employment action but what they are complaining about is they're saying that being placed on unpaid leave is uh inadequate an unreasonable accommodation so our precedent says that as part of their prima facie requirement to make the initial showing under the mcdonald douglas they have to come forward with at least an adverse employment action and then all the other stuff protected class and policy that's conflicting with the religious faith etc so they have alleged it in paragraph 127 of their complaint that the adverse employment action is being placed on unpaid leave do you disagree with that again i i do not disagree that they are saying that unpaid leave is an inadequate accommodation and on i'm saying i'm talking about a slightly different concept before we get to accommodations everything else i'm just talking about their prima facie case they say the adverse employment action is being placed on unpaid leave indefinitely is that consistent with your understanding of the complaint i mean it's certainly a complaint as i say it's paragraph 127 but i i don't take you to dispute it okay i just want to be precise your honor i it's not i'm not aware in an unreasonable accommodation case i'm not sure that adverse employment action element is it's there in i'm not sure that that element is part of the elements of an unreasonable accommodation claim and that's why i'm a little reluctant to take a position one way or the other about whether that element in the abstract is met we're not disputing that they can come in and argue on the merits that unpaid leave is unreasonable as an accommodation we think they're wrong about the merits though that question is not presented here but the key point is that they have been given an accommodation of unpaid they might not like it they might not think it's good enough but they have been given an accommodation and that's why i was making the point to judge elrond that would be sort of astonishing for this court to say that because united did that rather than aspiring them that's why they have well i suppose you would agree with me at least on this that if we want to talk about 50 years of title seven precedent we have that much saying that placing somebody on unpaid indefinite indefinite unpaid leave is an adverse employment action no different than failure to hire failure to promote changing of work conditions in a substantial way etc etc etc right but this this is exactly why i was being trying to be careful about that unpaid leave is the paradigmatic accommodation in cases like sabbath cases right but that's because the person is asking for it so you you cited to us the the case the ada case where they even if they're not asking for it let's say they say i want to go to the sabbath and i want you to pay me and the employer says no i'm not going to pay you you can you can take the day off but you're not going to yeah the employer's going to win that case every day so isn't the answer to judge elrod's question about why you know as to why these cases you don't see more of them is that in the quintessential title seven case we see a lot of them and this is the first case i've seen that's like that has this sort of conscience angle to it the adverse employment action has already been taken right the adverse you've already been placed on indefinite unpaid leave you've already been demoted or fired or failed to hire whatever it is and so it's the weird case where the employers instead of taking the adverse employment action because again it's part of the prime official case if you don't have it normally you don't even get to us right you just the eoc doesn't keep you know kicks it out you might give you a right to sue letter but it's poured out and doesn't even get to the fifth circuit without some kind of adverse employment action so this was the first point i would make to judge elrod the only reason that's true is because people don't come running in to ask for a pi or tro when they first ask for the accommodation if you don't get it if this court were to adopt the rule that being faced with a coercive choice is irreparable injury then every single time someone asks for an exemption from the sabbath every single time someone asks for an exemption from a hair a headdress rule every single time i ask for any accommodation and their employer says no before they violate the rule they'll just run into court and ask for a pi so that's never happened if i'm understanding it correctly that the the result should be exactly the same if the employer says you're fired or the employer says i'll give you five weeks to think about it and then you're fired those are exactly the same yes and here's why your honor here's why that makes a lot of sense it's tied to the point i was making to judge elrod a choice is not injury but can we just pause on that i was excited i realize there's a lot of moving parts but let's just pause on that last sentence a choice is not an injury so let me give you two different cases case number one united announces effective immediately all of our 100 000 employees there i'm sorry i should put it differently any of our 100 000 employees who are in same-sex relationships are fired effective immediately so that's case one case two united announces effective five weeks from today anyone who is still in a same-sex relationship will be fired now case two the reason and the ceo goes onto a zoom town hall and says the reason we're going to do it differently is we want you to have five weeks of dinner at home to talk with your loved one about how much you value your job and how much you value your relationship and we want to put you to the choice when you get five weeks of dinners to sit and debate that with your loved one about whether to stay employed or whether to terminate your same-sex relationship now how can you say that the choice is not a totally independent injury from losing the job you're you're saying you have five weeks to debate this with your loved one at home at dinner it strikes me like whatever the answers are about whether the pis are available and what precedents say what when the actions are actually taken i would think we'd have to at least agree that they're different injuries i don't think so your honor but let me give you one legal answer and then maybe that would be a good time to turn to the facts this case and why this case bears no resemblance to that so as a legal matter the reason why i don't think it's right is because no matter what with that five weeks the employees are better off the employees are better off because at least they have some choice in the matter about whether they're going to keep their job or not whereas if they get fired they've lost it but you're forcing the employee using the leverage of the job you're forcing the employee to choose between two things that are incredibly valuable to them one is the love of their partner and the other is is their job with all respect your honor title 7 is an employment statute and so the injury of losing your job is the injury the statute cares about and as between just saying you're fired and giving you a choice not to be fired it seems pretty clear to me that the injury is less when you actually have a choice which is why i if i again if i told you right now that united was going to fire their clients i don't think they would stand up and say hallelujah my injury has been redressed i think they would say that's horrible and that's terrible i'm just getting at a slightly more subtle point i think which is that all they need to show consistent with judge smith's opinion white is that the injuries are different right that one one injury comes from the employment action namely as you point out it's an employment statute back pay seniority etc etc etc and the other is an equitable injury that can be redressed because a court can intervene and take away the choice of conscience i'll give you another example i realized that this is different than employment but it really highlights i think the distinction between doing it yourself and enforcing someone else to participate in it with you if you drive by my house and you shoot my beagle right that's illegal and outrageous and i will make you pay for it obviously but if instead you drive by my house and you kidnap my beagle and then holding my beagle ransom you say to me well i'm either going to kill the beagle or i'm going to force you to resign from your job you've now put me to a choice right you've enlisted me using the power you have over me by the capture of the beagle you've enlisted me in a choice that of choosing between two things i love very much and those are just different injuries and so i would think a court without having to deal with the first one right having the past tense of an adverse employment action already been taken when you come in you say well we might take this important we will take this adverse employment action if you don't do what we want it's they're just different and i don't see why a court can't use the equitable power of an injunction to stop it so i'll make one last point on the law that i would like to try the one point i'll make on the law is the hypothetical you're giving is the same as every single quid pro quo sexual harassment suit you've ever filed right so every single time an employer says if you don't do x y or z in sexually some adverse consequence will happen to you you can make that exact choice argument they have zero cases in 50 years getting a preliminary injunction in those cases i don't think it's because the title 7 plaintiffs bar isn't aggressive i think it's because the title 7 plaintiffs bar recognizes that under this court's law including judge smith's decision in white that is just not irreparable have you seen a case where there's where just on the law point have you seen a case where someone brings the quid pro quo before it being completed you see what i'm getting at i see exactly what you're getting at and i'm no i'm not aware of one but again they haven't cited a case where they can and on the theory your honor is adopting it's sort of an inexplicable failure of every title 7 plaintiff's lawyer ever to not just cancel their client to just run into court and ask for a pi why not it just never happened and it's because courts recognize that the choice itself isn't an injury and the consequence of the choice is addressable on the back end if i could now switch the facts that i think it's important i think you basically acknowledge that it's it's this coercion that's well where's the coercion on the facts of this case there are five plaintiffs three of those plaintiffs have not been placed on unpaid leave at all period they don't dispute that their only argument is that it's not permanent of course it's not permanent we can't write a policy fixed in stone when we're dealing with an ongoing pandemic but they don't have any evidence also it hurts their seniority it hurts their seniority while they're on the unpaid the other jobs too they can't bid on the better jobs but in addition to that so that's an addition let me i'll address that right now that i would like to finish the point about the coercion uh so on that if you if your honor wouldn't mind i'll circle back on that on on the coercion it's it's true it's not permanent but there is no evidence to suggest that it's going to end anytime soon they can't show its actual or imminent injury so those three i think just clearly cannot show irreparable injury even on their own legal theory of the case so that leads to simbrano and cancano and i think what's important to focus on is those plaintiffs do not allege ever that they feel the sort of once in their complaint in their affidavits in their testimony anywhere did they ever say that they're feeling pressured to take the vaccine that they may take the vaccine that they are feeling a crisis of conscience that they're wrestling with self-doubt none of them all of that is lawyer argument they have extraordinarily experienced counsel they have these people what did they say kim cannon testified she will never take the vaccine no matter the cost she's not wrestling with some crisis of conscience she is acting exactly how you would think people who have steadfast religious convictions would act kim brana says he's making a difficult choice regarding his children's college so i'm sorry that's different that's right exactly right he's not saying i'm so worried about paying for my kids college tuition that i might actually violate my religious beliefs difficult choice again your honor it's their burden it's their burden to introduce they could have asked him the question are you thinking about violating their religion they didn't ask the question because they know what the answer is he is not going to violate his religion just to save his kids from having to get a college loan like most people in this country there is just no evidence at all that any of these plaintiffs feels any coercion the stress they feel is the stress anyone would feel when they lose their pay for a temporary period but that is not coercive that just every single title seven plaintiff ever so i think that even if you accept their legal theory their coercion argument just falls completely flat flat on the facts of this case they could have tried to show that their plaintiffs feel some pressure but they did not because they cannot what about the one who only has is it jonas i don't know which one who only has a certain amount of days for the temporary position or whatever yeah so so jonas uh and it's true that because of the cba uh we couldn't get the first accommodation that we gave her that lapses after 59 days as the record reflects and in our brief she will be providing another accommodation and by the way that's only if and when she can return to work she's been out since mid-october with because of a covid reinfection notwithstanding her natural immunity from covid uh if i could turn to judge roger questions about the seniority uh because i think that is an important part of the case we didn't really talk about it very much during my count of my colleagues time i think the reason that that fails is because it misunderstands the nature of the remedies that are available in the title 7 suit so their argument would apply in every unionized workforce every unionized workforce has collective bargaining agreements that have seniority that have benefits that attach to seniority and there's a reason they haven't cited a single case in the history of title 7 that has said that you can get a p.i because of that and the reason why is that this court's decisions and the supreme court's decisions recognize that if they prove their story everyone agrees that's true going forward so now all they have left to say well what about the jobs in the past there were jobs in the past that we weren't able to bid for and there are two points about that that are very important the first is sometimes the court can actually bump the incumbent mosley itself demonstrates that in mosley the court upheld bumping the incumbent now it said that that was permissible on the particular facts of that case and there will be factual disputes about whether the types of things that they want to bid for can or cannot fall within that but bumping is a available remedy even when it's not an available remedy this court's case bar reveals what is the proper remedy then you can get front pay you can get preferential treatment for future bids what you cannot get is a preliminary injunction and the last point and i think this is just independently dispositive again even if you because as judge pitman found and he certainly didn't abuse his discretion on this they haven't actually introduced any evidence of a concrete imminent bidding opportunity that they won't get to bid on that they can't get restored on the back end and they can't get front pay for in fact the only example they have cited in their briefs the only example is in a reply brief in affidavit they submitted with the reply brief to their motion to reconsider and judge pitman said that that was improper and refused to consider it that's their best evidence there's just no yes i'm going to switch gears to what about the kind of per se first amendment injunction in you know in other contexts the government context which we were very familiar with we have that in the statutory cases as well and ralupa and refra we have we give the juncture relief not because the statutes provide but because we analogize to the and we have in the circuit in cases like opulent life for example um so maybe there's some precedent for making a right can you tell me why there's not i'll say a couple things i'm not familiar with the case you are on or cited they have i don't believe cited it in their briefs but i'll say a couple of things that i think will answer it at a general level so the first is refer it is in ralupa are statutory they're not constitutional so they're not entitled to any sort of per se presumption of irreparable harm the way constitutional rights have there's no case that i'm aware of that has said that you just as a per se matter get an injunction because you're invoking a statutory violation what i think those cases are talking about so if you take the case like the kikamura case that they cited from the 10th circuit yeah that you could say there's a ripple injury the reason why is because there the government is prohibiting you from complying with your religious beliefs if the government actually stops you from complying with your religion so if for the analogy here if united literally grabbed these people and tried to jab them with a needle yeah that would be a reputable injury but that's not what's happening here they have a choice and i'm not aware of any case that has said that the choice is a reputable injury the closest they've come is the second circuit case they cite in jolly that's a case where there was a choice and the court did say there was a ripple injury so if they were trying to actually prohibit you or case where the where the the co-worker is assaulting you allegedly um can could you get an injunction from the co-worker assaulting you preliminarily look again our point is about the loss of pay is not irreparable yes if someone is physically assaulting you that's actually physically assaulting you that's a distinction that they're not trying to jab you by holding you down exactly and so jolly is the only case they have where there's a choice and in jolly i think the key difference is the choice was between complying with your religion or being locked in a cell for three years indefinitely yes of course being locked in the cell indefinitely for three years is a reputable injury that would be true whether his claim is a religion claim or any other claim it had nothing to do with it being religious that to do with the fact that it's obviously a reputable injury to be indefinitely detained what about the medical insurance plan thank your honor i want to turn to that so this court in morgan versus fletcher that was one of the two arguments she made that our second her first argument she was going to lose her house and our second argument was she was going to lose her medical benefits those are the sorts of common ordinary things that attach in every title seven suit that just is not enough for a reputable injury if i could i know i'm in my time with the ongoing cancer even with the the more fleshed out claim of that again yes your honor i just those are the sort of run-of-the-mill things that happen all the time it's a sad fact of reality that most employees in this country the special title several plaintiffs don't have millions of dollars in the bank to weather during litigation but that's not enough to get them a preliminary injunction it just never has been that's why they haven't cited a single case a single case that's ever granted an injunction on that ground i know i've hit my time and if your honor would like a couple quick points on exhaustion well no i think your your your time is up but i i don't know whether jill rodder had another question i mean i do i do want to ask you about and it has to do with exhaustion to the drew case touches on exhaustion and also the right right to get an injunction under under drew i know you you said you think it it's it's wrong and should be overruled uh but assuming that it's still good law on its own terms uh how do you get out from under exactly the way your honor actually suggested in your questions to him that it's factually distinguishable too in drew on the fact that we're presenting the eoc had already filed suit and it had already granted miss drew her right to sue notice but but but this court said that it was fine for her to get an injunction to preserve the status quo awaiting action by the eoc which as a as a matter of practicality makes our policy makes quite a bit of sense and that's exactly what the court said so i agree with your honor that the court's reasoning is broader than the facts that we presented and if the court's reasoning is legally defensible it'll be i have a lot of part of the time but the court's legal reasoning is clearly proposed by current supreme court president there are just no questions well it seems to me you have a problem with that i mean you can certainly address it but as you know the supreme court has told us that we don't anticipate or shouldn't anticipate what the supreme court would do in a particular situation and while there are certainly supreme court pronouncements that touch on this general subject there's not a supreme court case that specifically addresses point by point what's encompassed by the by the drew case your honor i don't think that that's the right way of thinking about it and i would urge your honor to look at this court's decision in stokes which we cited our brief this court has recognized that a single panel can depart from prior panel precedent when the supreme court's pronouncements make clear that the subsequent the prior precedent is no good stokes was making the exact argument we're making it said that look at sandoval look at the court's cases like sandoval it's totally clear that some prior precedent at this court is no longer good law and judge hankinson's opinion to the court agreed and said that the prior panel precedent has been abrogated by sandoval it's the exact argument we're making here involving the same exact case we're thinking here because i think the key point that we should focus on is they have never even tried to explain how their positions can be referenced out with the text of the statute the statute says you cannot bring a civil action until you have a right to sue notice they have brought a civil action they don't have a right to sue it is the easiest statutory interpretation case i can imagine and they have no textual argument for why they can do it their only point is that 50 years ago when this court took a much freer view of implying causes of action following the supreme court's lead the court ignored the statute and said equity but the supreme court has said stop doing that all right your time is expired thank you thank you mr chair you saved time for a bubble if i could let me let me respond to judge elrod's question about the record and then i'd like to briefly address five uh five matters uh judge elrod you asked about the record on miss hamilton and her uh her husband with cancer and and that that information can be found at pages 36 19 to 20 in the record um judge elrod also asked i think a perceptive question of mr mubon which is uh what what case law is there that prevents us from making a finding here that on these facts irreparable injury has been has been established and there was no answer at all to that question um and uh and on the other side of the scale there is the bst decision which in a very i mean everybody has to admit that at a minimum that's a very analogous uh situation and and it clearly suggests uh that irreparable injury can and should be found on these facts and um and and i think the argument is is powerful that the bst can appropriately be extended to to the context of a violation of statutory rights uh first of all this court's decision in the riley case in 1972 emphasized that title 7's accommodation provision was quote intended to in public employment uh and and that point was made in a somewhat different form by justice scalia in the abercrombie case as well um second this as as judge elrod alluded to the supreme court's hobby lobby decision and a whole range of other decisions involving statutes protecting religious liberty make clear that irreparable injury can arise from violations of those statutes and and it's appropriate to treat uh violations of of those statutes to the extent they impose irreparable harm it's it's it's entirely proper to recognize that uh and in fact the second circuit in jolly and the tenth circuit in in kikamora have have recognized that violations of statutory religious freedom rights can give rise to irreparable injury um and third alluding to supreme court's decision in samson uh judge ho in his opinion observed that if a case like this involving as we've discussed an ongoing effort to coerce employees into violating the religious beliefs does not present the extraordinary case that the supreme court had in mind in samson he said i don't know what case would um second um united points repeatedly to the to the potential for a slippery slope if the court recognizes the irreparable injury here won't it apply to all title 7 cases well there are lots of good reasons why that would not happen first of all the vaccine uh vaccine mandates are a new phenomenon and violating people's religious rights through a vaccine mandate are are a new phenomenon that that hopefully will will have from the the vast mine run of title 7 cases another way and it's quite it's quite different is that in most cases the employer just fires the employee rather than to take your example judge oldham sort of engages in a persistent effort to get them to change their conduct in some way that violates what they view as their as their fundamental belief um and as we mentioned earlier in most cases the employer also has a pretty good defense of undue hardship uh which obviously undermines the plainest likelihood of success on the merit so we we cannot imagine that simply taking bst and applying it in the title 7 context would would create a vast uh you know a vast new jurisprudence of uh irreparable injury in title 7 cases a third um and this goes to the how how you understand title 7 uh mr mupon said that i think he said that title 7 uh that the title 7 religious accommodation provision is not a discrimination protection well in fact if you look at the way the religious accommodation provision in title 7 is written religious discrimination is defined in the statute to include a failure to reasonably accommodate the employee's religious beliefs and so the statute itself puts a failure of accommodation on the same level with race and sex discrimination and all the other things that uh that title 7 protects against um fourth mr mupan talked about the you know the seeming incongruity between uh you know firing an employee versus uh versus coercing them over a period of time and and are really going to have a legal regime that encourages employers to fire their fire their employees rather than coerce them over a period of time well in fact um there's a there's a good reason why united there's several good reasons why united doesn't want to do that here first of all it would be apparent to anybody you have 15 more seconds okay uh it was their their title 7 violation would be crystal clear if they did that and they want to keep the they want to keep these employees ready so that they can recall them um when they you know when the pandemic recedes and they have a greater demand so it's in their interest to what is the status of this case in the district court when is the trial uh the trial hasn't been scheduled and and and there won't be a there won't be a trial until after the EEOC rules have you heard anything do we know what is the record reflect anything from the EEOC are they doing an investigation is they're asking for information what's the status of this case that's that's not in the record but i can but i can tell you right now i think it is probably a matter of tell me that's not in the record public record but we're moving ahead with it all right thank you your case is under submission and the court is in recess until nine o'clock tomorrow